## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

JOHN B. LOWE                                                    PETITIONER

V.                                        CIVIL ACTION NO.2:21CV9 KS-LGI

ANDREW MILLS                                                  RESPONDENT

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

John Lowe seeks federal habeas relief under 28 U.S.C. § 2254. After reviewing

the entire record and all the applicable law, the undersigned recommends that his petition

be dismissed with prejudice.

#### Factual and Procedural Background

In 2015, Lowe was convicted of five counts of child exploitation by a Jones

County jury and sentenced as a violent habitual offender to consecutive life terms on each

count in the custody of the Mississippi Department of Corrections (MDOC).[1] The

relevant facts are accurately described in the state court's opinion and are incorporated

nearly verbatim below, with additional facts from the record added as needed.

Lowe met Marie Taylor in July 2008, and the two began dating. At some point,

Taylor began living with Lowe in his trailer in Jones County. Taylor, along with her two

daughters—who were about eight and fifteen years old at the time—eventually moved into

---

[1] The court also ordered Lowe to pay a fine of $100,000 for each count, totaling $500,000.

the trailer directly next door to Lowe's, where they were living during the events giving rise to this case. Despite the move, Taylor and Lowe continued their romantic relationship.[2]

Taylor testified at trial that, at some point while they were dating, Lowe acquired a broken Hewlett Packard laptop computer from his daughter. Lowe repaired the laptop and began using it. He set up two different user accounts on the laptop: "Muzicman" and "Minnie."[3] Lowe allowed Taylor and her daughters to use the laptop but instructed them to only access the "Minnie" account, which was not password-protected. Lowe told them not to use the "Muzicman" account, which was protected by a password that neither Taylor nor her daughters knew. Both Taylor and her oldest daughter testified that, although Lowe allowed them to use the laptop, they understood that it ultimately belonged to him. Taylor testified that she had never seen Lowe download child pornography. She also testified that she had never seen Lowe take his laptop with him to work. In contrast, Taylor's daughter testified that she had previously witnessed Lowe take his laptop with him when he left for work.

On June 30, 2009, Investigator Don Sumrall with the Jones County Sheriff's Department received reports that Lowe had inappropriately touched several children. The following day, Investigator Sumrall conducted interviews with those children. One child— a nine or ten-year-old girl identified at trial as C.S.—told Investigator Sumrall that she was

---

[2] At the time of trial, Marie had married, and her surname was Jones, rather than Taylor. For clarity, however, she is referred to here as Marie Taylor, as that was her name at the time when the events occurred.

[3] The record is unclear whether the second account was actually named "Minnie" or "Mimi;" at trial the account was referred to by both names. However, for consistency, we use "Minnie," as it is the name used most often to refer to the second account.

playing with some other children near Lowe's trailer on one occasion, and she entered the trailer to find Lowe sitting in the living room.[4] Lowe got up, went to his bedroom and retrieved his laptop, and brought it back to the living room. Lowe turned on the laptop and showed C.S. "[a] movie with naked people in it."  When Investigator Sumrall asked C.S. whether the "naked people" in the movie were adults or children, C.S. said that she did not know.  C.S. then became visibly embarrassed and ran out of the interview room.

Subsequently, Investigator Sumrall ran a criminal history check on Lowe and discovered that he had previously pleaded guilty to both exploitation of a minor and voyeurism.[5] According to the probation order, Lowe was sentenced to serve a term of fifteen years for exploitation of a minor. Nine of those years were to be served in the custody of MDOC, with six years suspended and five years of post-release supervision.[6] As of June 30, 2009, Lowe had been out of prison for less than a year and was on probation.

On July 1, 2009, Investigator Sumrall went to Lowe's trailer, but Lowe was nowhere to be found. Investigator Sumrall informed Taylor that he was looking for Lowe. Taylor admitted at trial that, immediately after Investigator Sumrall left, she drove to Masonite—

---

[4] The record does not indicate why C.S. entered Lowe's trailer.

[5] The record does not include documents regarding Lowe's conviction for voyeurism; however, during Lowe's sentencing hearing, the court remarked that the two convictions were for separate incidents that took place at separate times.

[6] The record contains conflicting information regarding whether Lowe was sentenced to serve five or six years on supervised probation. However, this issue is moot, as neither party raises an argument regarding it, and as Lowe was charged in Jones County within only one year of being released from MDOC custody.

where Lowe was working as a janitor at the time—and left a note on his truck to warn him that the police were looking for him. Lowe failed to show up at work the next day and never picked up his final paycheck. Shortly thereafter, authorities discovered Lowe's truck in a Wal–Mart parking lot in Columbia, Mississippi. MDOC classified Lowe as an escaped fugitive and notified the United States Marshal Service of his disappearance.

Investigator Sumrall obtained a search warrant of Lowe's trailer to retrieve his laptop. Officials conducted a search on July 2, 2009, but were unable to recover the laptop. Later that evening, Investigator Sumrall received a phone call from Taylor, during which she told him that she had the laptop in her possession. When Investigator Sumrall asked Taylor to turn the laptop over to him, Taylor insisted that she had to go to bed because she had to go to work early the next morning; however, she told Investigator Sumrall that she would leave the laptop with a neighbor, Deanna Stringer, so that Investigator Sumrall could retrieve it the following morning.

The next morning, Investigator Sumrall retrieved the laptop from Stringer. He noted that the laptop's power cord "was barely hanging by a thread" and "looked like it had been torn." Both Taylor and Stringer later testified at trial that they were unable to power-on the laptop before turning it over to Investigator Sumrall.

Investigator Sumrall maintained that he did not inspect the laptop at the time that he retrieved it from Stringer; rather, he obtained an additional search warrant on July 9, 2009, for the express purpose of inspecting the laptop's hard drive. Investigator Sumrall signed the affidavit accompanying the search warrant. He then turned the laptop over to Tom Thomas, a certified forensic examiner retained by the State, who conducted the

4

actual search of the laptop's contents. Under the "Muzicman" account, Thomas discovered five videos depicting child pornography, some of which had been downloaded on June 6, 2009, (twice in the morning and twice in the afternoon when Lowe was reportedly at work). Thomas testified at trial that he found no evidence of child pornography under the "Minnie" account.

John Claxton, Lowe's employer at Masonite, testified that, on June 6, 2009, Lowe clocked in to work at 6:06 a.m. and clocked out at 12:09 p.m. Claxton testified that Lowe was an "above average" employee. While Claxton maintained that he had never witnessed Lowe use Lowe's personal laptop at work, he admitted that there were times when Lowe was unsupervised while working. Claxton further testified that Lowe was unsupervised while at Masonite on June 6, 2009. At some point before trial, Thomas and Investigator Sumrall visited Masonite and discovered that they were able to pick up several Wi-Fi access points from the parking lot that were not password-protected and were accessible by the public.

The United States Marshal Service located Lowe on September 1, 2009, in a motel room in San Diego, California. He was brought back to Mississippi and was charged with violating the conditions of his probation for leaving the state, among other reasons.[7] *Lowe v. State*, 269 So. 3d 244, 247–49 (Miss. Ct. App. 2018).

---

[7] Specifically, Lowe was charged with failing to: (1) "commit no offense," as he was charged with possession of child pornography; (2) "report to [his] probation officer as directed," as he did not report during the months of July, August, and September; (3) "permit home visits," as he was not home when officers visited; (4) "remain within the state of [Mississippi]," as he was found in California; (4) "pay fine and fees," as he did not pay his supervision fees for the month of July,

## Discussion

A few months later, Lowe was indicted by a grand jury on five counts of exploitation of a child under Miss. Code. Ann. § 97-5-33(3) (Rev. 2014) which provides that, "[n]o person shall, by any means including computer, knowingly send, transport, transmit, ship, mail or receive any photograph, drawing, sketch, film, video tape[,] or other visual depiction of an actual child engaging in sexually explicit conduct."[8]  Lowe was initially tried and convicted in 2011, but the conviction was reversed and remanded on due process grounds for failing to grant his request for a State-funded independent computer forensics expert.  *Lowe v. State*, 127 So. 3d 178 (Miss. 2013).  Lowe was re-tried and convicted again in 2015.

Aggrieved, Lowe appealed and alleged, through counsel, several errors:  (1) the jury was improperly instructed on circumstantial evidence; constructive possession, and flight; (2) trial counsel was ineffective; (3) the weight and sufficiency of the evidence were insufficient, and, (4) his prior conviction was erroneously admitted at trial.  Lowe also filed, *pro se*, two appellate briefs totaling 252 pages asserting the trial court erred by: (1) denying defense motions to suppress and exclude evidence; (2) denying a defense motion to dismiss for lack of venue, jurisdiction, and proof; and, (3) allowing the jury to

---

August, and September; and (5) "register as a sex offender," as he did not keep his registration current.

[8] The videos as listed in the indictment were as follows: (1) Count I – image styled "177011-Good! 2 YO girl getting raped during diaper change;" (2) Count II – image styled "255201- Hot Spermed Little Girl Mix;" (3) Count III – image styled "193937-14 CBABY2;" (4) Count IV- image styled "193937-35 Vicky-Jack Full;" and (5) Count V – image styled "161065 – Children Sexually Abused – Beautiful Venezuka girls (3-4 YOA) Part 2 – PTHC Hussyfan _Pedro … Makes a Childs Cute Peepee Orgasm's Happen – Precious_!!Kids Need Sex Too_."

view the pornographic videos without proof, foundation, or filtering the evidence under the state evidentiary rules. Finding no errors, the Mississippi Court of Appeals affirmed Lowe's convictions and sentences for a second time. His petitions for rehearing and certiorari were denied by both the Mississippi Supreme Court and the United States Supreme Court. *Lowe*, 269 So. 3d 244 *reh'g denied* (September 11, 2018); *Lowe v. State*, 258 So. 3d 285 (Miss. 2018); *Lowe v. Mississippi*, 139 S. Ct. 1369 (2019).

After his appeals, Lowe initiated state post-conviction proceedings and alleged nine errors: (1) the jury was improperly instructed on circumstantial evidence; (2) trial counsel was ineffective regarding jury instructions on constructive possession and circumstantial evidence; (3) the convictions were contrary to the weight and sufficiency of the evidence; (4) the circuit court erred in denying his motion to suppress evidence obtained from his laptop; (5) the trial court constructively amended his indictment when it omitted the language "from the internet" from jury instructions; (6) the trial court violated his due-process right to be heard; (7) his due process rights were violated because he was found guilty of crimes different from those provided in his indictment; (8) the trial and appellate courts applied erroneous legal standards; and (9) the circuit court erred in allowing the jury to view the pornographic videos without a proper foundation, and filtering the evidence through M.R.E. 403 and 404. The Mississippi Supreme Court found the ineffective assistance of counsel claims lacked merit, and all other issues were barred by res judicata, except Grounds Seven and Eight, which were "waived or barred by res judicata, and fail to meet any exceptions thereto."

Lowe then filed a second post-conviction application asserting that intervening decisions issued by the Mississippi Supreme Court entitled him to relief. *See Moore v. State*, 247 So. 3d 1198 (Miss. 2018), *overruled by Nevels v. State*, 325 So. 3d 627 (Miss. 2021); *Nuckolls v. State*, 179 So. 3d 1046 (Miss. 2015). Finding this exception had not been met, the court denied Lowe's second application as "successive writ-barred and barred by res judicata."

Now, Lowe petitions this court and asserts, in nine grounds, that many of the claims rejected in state court entitle him to federal habeas corpus relief under § 2254. They do not.

### Procedurally Defaulted Claims (Grounds Seven and Eight)

To begin, two of his federal claims are procedurally defaulted and foreclosed from federal review. Grounds seven and eight, raised for the first time in post-conviction, center around Lowe's claim that he was wrongly convicted of a crime for which he was not indicted—the possession, not the receipt, of child pornography. In ground seven, Lowe maintains that the state courts violated his due process rights by applying "possession standards and laws" while "refus[ing] to acknowledge that receipt and possession are separate and distinct charges." In ground eight, he reiterates that the wrong laws were applied, but adds that the jury was also "repeatedly instructed" that the State "did not have to prove venue and jurisdiction and that circumstantial evidence stacks up and becomes direct evidence."

Respondent submits that these arguments are procedurally defaulted because the Mississippi Supreme Court's order denying post-conviction relief invoked Miss. Code

Ann. § 99-39-21(1)'s procedural bar.[9]  That is, Lowe waived these claims by failing to raise them at trial or on direct appeal.   Under the procedural default doctrine, a federal court may not consider habeas claims when the state court rejected them on an independent and adequate state law ground.  *Martin v. Maxey*, 98 F.3d 844 (5th Cir. 1996).  The Fifth Circuit has long considered Miss. Code. Ann. § 99-39-21(1) to be an adequate state procedural bar because Mississippi courts have strictly and regularly applied it to similar claims.  *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).

Lowe can save his procedurally defaulted claims, however, if he can establish both cause for the default and actual prejudice resulting from it, or if he can show that a "fundamental miscarriage of justice" will occur if his claims are not considered. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).  To establish cause, "there must be something external to the petitioner, something that cannot fairly be attributed to him." 501 U.S. at 753.  To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been

---

[9] Miss. Code. Ann. § 99-39-21(1) provides that the:

> [f]ailure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Lowe makes no attempt to show that either is met here.

Similarly, he does not show that, as a factual matter, he is actually innocent of his crimes or would suffer a fundamental miscarriage of justice if the defaulted claims were not considered. The "fundamental miscarriage of justice" exception is triggered only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986). It requires that the petitioner support such an allegation with *new,* reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). Lowe has presented no new evidence here. So, his claims raised for the first time in state post-conviction are foreclosed from federal review.

That said, the undersigned notes that the Mississippi Supreme Court found that grounds seven and eight were "waived ***or*** barred by res judicata."[10] When claims are subject to this latter bar, they are considered on the merits, unless barred for some other reason. See Miss. Code. Ann. § 99-39-21 (2)-(3).[11] *Jackson v. Epps*, 447 F. App'x 535,

---

[10] Emphasis added.

[11] Miss. Code. Ann. § 99-39-21 (2)-(3) provides:

> (2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this article upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.

> (3) The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.

544 (5th Cir. 2011).  Though the court didn't specify which claims were subject to this bar, it arguably applies to the circumstantial-evidence argument in ground eight, as it could be liberally construed as having been raised and rejected on direct appeal.  And as discussed in ground one, that rejection was not contrary to, or an unreasonable application of clearly established federal law.  To the extent, however, the court construes any other claims in grounds seven and eight as similarly barred, they are also addressed on the merits herein.

### Claims Reviewed on the Merits in State Court

Lowe's remaining claims, as discussed below, were adjudicated on the merits on direct appeal or post-conviction review.  AEDPA precludes this Court from granting Lowe federal habeas corpus relief unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This court reviews questions of law as well as mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1) of the AEDPA, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on

11

materially indistinguishable facts. *Id.* "[C]learly established Federal law includes only the holdings of the Court's decisions," *White v. Woodall*, 572 U.S. 415, 419, 134 S. Ct. 1697, 188 L. Ed. 2d 698 (2014) (internal citation and quotation marks omitted). Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 175 L. Ed. 2d 738 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

## Ground One (Jury Instructions)

In ground one, Lowe alleges that he is entitled to habeas relief because the trial court allowed erroneous jury instructions. He isn't. Challenges to jury instructions rarely

12

form a basis for federal habeas corpus relief. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993). The inquiry is not "whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude." *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (quoting *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986)). A habeas petitioner must establish "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973). Even when an instruction is deemed erroneous, habeas corpus relief is not warranted when the error was harmless. A petitioner must show that the instruction had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (citation omitted). Lowe has not met this burden.

Lowe's arguments, for instance, echo those made by appellate counsel on direct appeal: the circumstantial evidence instructions given at trial did not properly instruct the jury on either the definition of circumstantial evidence or the burden of proof. But as Respondent points out, two of the instructions Lowe complains of were tendered or accepted by the defense.[12] *Matheson v. U S*, 227 U.S. 540, 33 S. Ct. 355, 57 L. Ed. 631

---

[12] Jury Instruction D-4A provided:

> The Court instructs the jury that if the State has relied on circumstantial evidence to establish its theory of guilt of the Defendant, then the evidence for the State must be so strong as to establish the guilt of the Defendant, not only beyond a reasonable doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than that of guilt.

(1913) (recognizing that error relating to a charge requested by the challenging party did not require reversal). Though Lowe submits that counsel rendered ineffective assistance in doing so, his argument was rejected on state post-conviction review.

As for the circumstantial evidence burden-of-proof instructions that Lowe contends were erroneously denied, the Mississippi Court of Appeals found there was no abuse of discretion because there was *direct evidence* of Lowe's crimes. The court explained:

> As previously stated, Investigator Sumrall commenced his investigation of Lowe due, in part, to testimony by C.S. that Lowe had shown her a video depicting naked persons on his laptop. While this fact alone may not amount to direct evidence of possession of child pornography, we also note that five videos depicting child pornography were recovered from Lowe's laptop. At trial, both Taylor and her oldest daughter testified that Lowe was the owner of the laptop and that he accessed it using the "Muzicman" account. Taylor and her daughter also testified that "Muzicman" was password-protected and that Lowe had instructed them not to use that account. Taylor's daughter testified that she had witnessed Lowe take his laptop to work. Claxton testified that, on the day some of the videos were purportedly downloaded, Lowe had clocked in to work and was unsupervised. Finally, Thomas testified that several Wi-Fi access points were accessible by the public from the Masonite parking lot. We find that all of this evidence, combined, serves as direct evidence to show that child pornography was recovered from the laptop, that Lowe was in dominion or control over the laptop, and that Lowe possessed the child pornography, constructively, at the very least. As such, we find that the trial court did not abuse its discretion in refusing the circumstantial-evidence instruction[s].

---

Jury Instruction D-3 provided:

> The Court instructs the jury that a circumstantial evidence case is one in which there is neither an eyewitness nor a confession to the crime. *Mangum v. State*, 762 So. 2d 337, 344 (Miss. 2000). Before you may find John B. Lowe guilty of any offense, every reasonable hypothesis other than guilt must be excluded in order to convict. *Hedrick v. State*, 637 So. 2d 834 (Miss. 1994).

14

*Lowe*, 269 So. 3d at 252.  In addition to this evidence, the undersigned notes that Thomas testified that the Muzicman account had connected to the internet, "via a Belkin wireless device," between May 24, 2009, and July 2, 2009.  His computer forensics examination showed the videos, some of which were in Muzicman's "favorites" directory, were downloaded on June 6, 2009, using the BitTorrent[13] application "so that they could be viewed again."  Thomas also testified that the videos could have been downloaded to the hard drive from the internet or copied from an external drive or disc.

But even if the evidence was "wholly circumstantial," Lowe possesses no federal constitutional right to a circumstantial-evidence instruction.  *See Pea v. Cain*, No. CV 14-

---

[13] According to the company's website, BitTorrent is the largest decentralized P2P communications protocol for distributing data and large files over the Internet. When the BitTorrent protocol was introduced, it transformed the world of file sharing by speeding up downloads for both individual users and organizations needing to transfer large amounts of data. Before BitTorrent, file downloads were initiated from a centralized server or a single user (a peer), resulting in slow download speeds. The BitTorrent protocol addressed this limitation by enabling the download and upload of files between many users. Millions of users began to use the BitTorrent protocol to download and share files, and companies began to use the protocol to distribute data more efficiently."  https://www.bittorrent.com/company/about-us/

In child pornography cases across the country, defendants have used the BitTorrent peer-to-peer sharing program. *United States v. Lawrence*, 920 F.3d 331, 339 (5th Cir. 2019) (citing *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 83 (E.D.N.Y. 2012) ("BitTorrent works by breaking files into many smaller files 'to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), [and] allows users to join a 'swarm' of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).'"). *United States v. Gonzales*, No. CR1701311001 PHX-DGC, 2019 WL 669813, at *1 (D. Ariz. Feb. 19, 2019); *United States v. Fletcher*, 946 F.3d 402, 404 (8th Cir. 2019); *United States v. Lampley*, 781 F. App'x. 282, 283 (5th Cir. 2019); *United States v. Ruiz-Castelo,* 835 F. App'x'. 187, 190 (9th Cir. 2020).

0083-JJB-EWD, 2017 WL 1197872, at *11 (M.D. La. Feb. 28, 2017), *report and recommendation approved,* No. CV 14-83-JJB-EWD, *Pea v. Cain*, No. CV 14-83-JJB-EWD, 2017 WL 1199740 (M.D. La. Mar. 30, 2017); *Griffin v. New York State Dep't of Corr.*, No. 06 CIV. 14217(GEL), 2007 WL 1296203, at *2 (S.D.N.Y. May 2, 2007) ("as a matter of federal constitutional law, circumstantial evidence is no different than direct evidence; so long as the jury is satisfied of guilt beyond a reasonable doubt, the type of evidence that convinces jurors is immaterial."); *Martinez v. Reynolds*, 888 F. Supp. 459, 262 (E.D.N.Y. 1995). The United States Supreme Court has long observed that "the better rule is that where the jury is properly instructed on the standards of reasonable doubt,[14] such an additional instruction on circumstantial evidence is confusing and incorrect." *Holland v. United States*, 348 U.S. 121, 239–40, 75 S. Ct. 127, 99 L. Ed. 150 (1954). Indeed, challenged jury instructions ought "not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)). This is because "a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." *Id.*

        This was the case here. Lowe has not shown that the jury instructions, including those proffered by the defense, caused "substantial and injurious effect or influence in

---

[14] The record reflects that the jury was given multiple instructions covering the presumption of innocence and reasonable doubt. Lowe does not contend these were insufficient.

16

determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (citation omitted). Nor has he shown that it "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. Given the evidence, Lowe has presented nothing in his habeas petition to overcome the deference afforded to the state court's rejection of this claim.

### Ground Two (Ineffective Assistance of Counsel)

In ground two, Lowe alleges that trial counsel was ineffective in handling the jury instructions, specifically in failing to proffer a constructive-possession instruction and an adequate circumstantial-evidence instruction as argued in ground one. Both arguments were rejected on post-conviction. The undersigned submits that there was no unreasonable application of *Strickland* or its progeny in this determination.

To establish a claim for ineffective assistance of counsel, a petitioner must show (1) "counsel's representation 'fell below an objective standard of reasonableness,'" and (2) "but for his counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). It is not enough to establish a deficiency and resulting prejudice, however. *United States v. Lewis*, 786 F.2d 1278, 1281 (5th Cir. 1986). To warrant habeas relief, Lowe must show that the Mississippi Supreme Court's adjudication of his ineffective assistance of counsel claim was an unreasonable application of *Strickland*. Thus, under the limited scope of AEDPA review, even if this Court found the Mississippi Supreme Court's application of *Strickland* was incorrect, we

could not recommend granting habeas relief unless we found that court's application of *Strickland* to be objectively unreasonable or an actual misapplication of the law. The United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact doubly deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (citation omitted). "[S]urmounting *Strickland's* high bar is never an easy task and [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Vasquez v. Thaler*, 505 F. App'x 319, 326 (5th Cir. 2013) (quoting *Premo v. Moore*, 562 U.S. 115, 122, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011) (internal quotation marks and citations omitted)).

Lowe claims that counsel was ineffective in handling jury instructions on constructive possession and circumstantial evidence. Specifically, Lowe argues that counsel was ineffective for failing to submit a constructive-possession instruction and for

18

"acquiescing" to the State's withdrawal of the model instruction regarding the same.[15]
Not so.

Consistent with the defense's strategy throughout trial, counsel objected to a constructive-possession instruction on the grounds that "this is not a possession case," asserting in support that "there's a separate statute and a separate charge for possession of child pornography." Lowe, himself, advocates this position throughout his petition. To bolster the argument, counsel also submitted instructions, which instructed the jury that they could not find Lowe guilty "simply by finding that sexually explicit videos or images were on his computer." Instead, the State had to "prove beyond a reasonable doubt that John B. Lowe himself downloaded the videos. . . ." Counsel's failure to push for a constructive-possession instruction was therefore clearly a matter of trial strategy. Lowe has not shown otherwise, and "[i]t is his burden to do so." *Guidry v. Lumpkin*, 2 F.4th 472, 493 (5th Cir. 2021), *cert. denied,* 142 S. Ct. 1212, 212 L. Ed. 2d 218 (2022). That the strategy did not succeed does not render it constitutionally ineffective. *Avila v. Quarterman*, 560 F.3d 299 (5th Cir. 2009). In the end, the trial court noted that no circumstantial evidence instruction was required as there was "no evidence contradicting

---

[15]     The instruction at issue, S-6, provided:

> Possession, as that term is used in this case, may be actual or constructive. A person has actual possession when he or she knowingly has direct, immediate, and exclusive physical control over the thing or object. A person has constructive possession when he or she lacks actual possession of the thing or object but knowingly has both the power and the intention, at a given time, to exercise control or dominion over the thing or object, either directly or through another person.

that [the computer belonged to Lowe [and it was utilized by him and by [his girlfriend's family.]"

Lowe also argues that counsel rendered ineffective assistance because he submitted an instruction that "inadequately instructed the jury on the burden of proof required for circumstantial evidence"—a point highlighted by the dissent on certiorari review.[16]  Respondent notes that the instruction at issue, D-4A, was based on Mississippi's model circumstantial evidence instruction which states:

> The Court instructs the jury that if the State has relied on circumstantial evidence to establish its theory of guilt of the Defendant, then the evidence for the State must be so strong as to establish the guilt of the Defendant, not only beyond a reasonable doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than guilt.

Liberally construed, Lowe's complaint on this point echoes appellate counsel's claim that the instruction was erroneous because it makes the application of the burden of proof "conditioned on the jury making its own determination of whether the evidence against Lowe was entirely circumstantial, a legal conclusion, without any other instruction on the definition of circumstantial instruction."  Though the dissent appeared to agree on certiorari review, this does not entitle Lowe to habeas relief.   The majority of the Mississippi Supreme Court denied the petition for writ of certiorari, as did the United States Supreme Court.  And, as noted, the state court concluded on appellate review that

---

[16]  In a separate written statement on certiorari review, Justice Kitchens explained that the "determination of whether the case is wholly circumstantial is for the court, not the jury. But Instruction D-4A charged the jury with determining whether the evidence was circumstantial, a task with which the jury is neither by the law nor equipped by virtue of training in the law to undertake." *Lowe*, No. 2016-CT-00214-SCT; ECF No. 21-18, p. 60.

Lowe was not entitled to a circumstantial evidence instruction because there was *direct evidence* that Lowe "at the very least" constructively possessed child pornography.

But even if counsel's handling of these instructions fell below an objective standard of reasonableness, a claim of ineffective assistance of counsel does not succeed on deficiency of counsel alone. Lowe must prove that he was prejudiced, and that but for counsel's error, the proceedings would have been different. In making this assessment, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently," but "whether it is reasonably likely the result would have been different." *Vasquez v. Thaler*, 505 F. App'x 319, 325 (5th Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 111–12, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Adekeye v. Davis*, 938 F.3d 678, 684 (5th Cir. 2019) (quoting *Harrington*, 562 U.S. at 102). Lowe has not shown a substantial likelihood that a juror would have reached a different verdict had they been instructed differently on constructive possession and the circumstantial evidence. *Nelson v. Lumpkin*, 72 F.4th 649, 662 (5th Cir. 2023)

Applying the doubly deferential standard of review, neither of Lowe's ineffective assistance of counsel claims establish that the Mississippi's Supreme Court's rejection of them was contrary to or an unreasonable application of *Strickland*. Accordingly, it is recommended that federal habeas relief be denied on this claim.

### Ground Three (Weight and Sufficiency of the Evidence)

Next, Lowe challenges the weight and sufficiency of the evidence supporting his conviction.  He specifically claims that the only evidence "the State brought forth was that an unidentified laptop was found to have alleged child pornography on the hard drive" and "no one knows how, or who might have put it there."

The law is clear.  Unlike a sufficiency-of-the-evidence claim, a weight-of-the-evidence claim requires assessing the credibility of the evidence presented at trial.  *Tibbs v. Fla.*, 457 U.S. 31, 37–38, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982).  "The credibility of the witnesses and the weight of the evidence is the exclusive province of the jury." *Hebert v. Rogers*, 890 F.3d 213, 225 (5th Cir. 2018) (citation omitted).  It is purely a matter of state law and is not cognizable on habeas review.  *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . .").  Because Lowe's challenge to the weight of the evidence is not a valid claim for habeas corpus review, his request for relief on this basis should be denied.

A sufficiency-of-the-evidence claim, however, is based on federal due process principles, requiring the State to prove each element of the offense beyond a reasonable doubt.  The only relevant question in assessing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  *Jackson* requires us to look to state law for the substantive elements of the

22

offense, but "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012) (internal quotation marks omitted). *Jackson* claims also "face a high bar in federal proceedings because they are subject to two layers of judicial deference." *Id.* at 651. In the first layer, a state appeals court reviewing the sufficiency of the evidence sets aside the jury's verdict "only if no rational trier of fact could have agreed with the jury." *Id.* In the second layer, a federal court grants habeas relief only upon a finding that the state court's rejection of a sufficiency of the evidence claim was "objectively unreasonable." *Id.* Under *Jackson's* sufficiency-of-the-evidence standard, juries have broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that they "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

As noted, Lowe was charged and convicted of five counts of exploitation of a child under Miss. Code. Ann. § 97-5-33(3), which provides that, "[n]o person shall, by any means including computer, knowingly send, transport, transmit, ship, mail or receive any photograph, drawing, sketch, film, video tape[,] or other visual depiction of an actual child engaging in sexually explicit conduct." His indictment charged that in five counts, in the Second Judicial District of Jones County, Mississippi, Lowe "downloaded on or about the 6th day of June, 2009 A.D., [and] did willfully, intentionally, unlawfully, and knowingly, via the internet/computer receive a visual depiction image . . ." "of an actual child under eighteen years (18) of age engaging in sexually explicit conduct, as part of a common plan or scheme or as part of the same transaction or occurrence." On each

count, the jury was instructed to find beyond a reasonable doubt that Lowe knowingly, via the internet/computer, downloaded and/or received the images.

Viewing the evidence in the light most favorable to the State, the Mississippi Court of Appeals concluded that the jury heard sufficient evidence from which it could rationally infer that Lowe committed the crimes alleged beyond a reasonable doubt. In doing so, the court explained that it reverses for insufficiency of the evidence "only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Lowe*, 269 So. 3d at 253 (quoting *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). But here the essential elements of the Miss. Code. Ann. § 97-5-33 (3) were present. Lowe's arguments to the contrary lacked merit. The evidence showed that "child pornography was recovered from the laptop, that Lowe was in dominion or control over the laptop, and that Lowe possessed the child pornography, constructively, at the very least." *Lowe*, 269 So. 3d at 252.

Under our limited AEDPA review, the state court's rejection of Lowe's sufficiency-of-the-evidence claim was neither contrary to, nor an unreasonable application of, *Jackson.* On the contrary, the jury's construction of the evidence was reasonable, and its resulting decision to find Lowe guilty of possession of child pornography beyond a reasonable doubt under Mississippi law was rational. No habeas relief is warranted on this claim.

## Ground Four (Prior Conviction)

Lowe contends that he is entitled to habeas relief because the trial court erroneously admitted his prior conviction for child pornography. The trial court ruled the evidence was admissible because defense counsel opened the door to prior-conviction evidence by asking the neighbor's stepson whether he was currently serving time for the possession of child-pornography on cross-examination. The court of appeals found no merit to the issue, finding the evidence was properly admissible for proving identity under Rule 404(b) of the Mississippi Rules of Evidence.

This court has no authority to "review the mine run of evidentiary rulings of state trial courts." *Gonzales v. Thaler*, 643 F.3d 425, 430–31 (5th Cir. 2011). For purposes of federal review, "[a] state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999). To merit relief, Lowe must show that the admission of his prior child pornography conviction "had a substantial and injurious effect" on the jury's verdict. "This is a high hurdle, even without AEDPA's added level of deference," and it is one Lowe fails to meet. *Gonzales*, 643 F.3d 425, 430–31. The jury heard evidence establishing guilt independent of Lowe's prior conviction. In addition to C.S.'s report that Lowe showed her a movie depicting naked people, the jury was shown the five child pornography videos found on his computer's hard drive in a password protected account to which he had sole access, and heard testimony that he left his job, paycheck, and vehicle in Mississippi after learning

25

that the police were looking for him. The admission of his prior conviction did not violate his right to a fair trial.  He is entitled to no relief.

### Ground Five (Constructive Amendment of Indictment)

In ground five, Lowe alleges the trial court constructively amended his indictment by deleting the words "via the internet" from the jury instructions proffered by the defense.  During the jury-instructions conference, the defense proffered D-6 to D-10, which instructed the jury to find beyond a reasonable doubt that Lowe himself downloaded the videos via the internet.  After dismissing the jury for deliberations, however, the trial court announced that he *sua sponte* omitted the language "from the internet" after realizing that it was inconsistent with his prior refusals of D-16 to D-20, which included the same language.  Defense counsel noted that while it was too late to "undo it," he objected to "altering the instructions."  The trial court responded that he "did not believe the law or the wording of the indictment requires . . .  that the pornographic material be received only via the internet."  Indeed, the trial court had previously noted that the defense's argument "implies that the word downloading can only apply to the internet, that the word downloading could never apply to putting something on a computer from another source."  Still, Lowe maintains the trial court constructively amended his indictment by removing the phrase.  Not so.

First, the sufficiency of a state indictment is not a matter of federal habeas relief unless it is shown that the indictment was so defective that the convicting court did not have jurisdiction.  *Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007) (citation and internal quotation marks omitted).  "State law dictates whether a state indictment is

26

sufficient to confer a court with jurisdiction," *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994), and where, as set forth below, the "state courts have held that an indictment is sufficient under state law, a federal court need not address that issue." *Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009); *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994).  By denying certiorari review on this and the other issues raised on direct appeal, the Mississippi Supreme Court necessarily found that the indictment conferred jurisdiction, thereby foreclosing federal review.  *Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir. 1985).

Second, even if federal review were not precluded, Lowe's indictment claim would not entitle him to habeas relief.  "A constructive amendment occurs when it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which [he] was charged." *United States v. McMillan*, 600 F.3d 434, 450 (5th Cir. 2010).  The Mississippi Court of Appeals, citing both state and federal authority, found Lowe's indictment argument lacked merit because the omitted language was not an essential element of the crime.  It noted in fact, that "[r]equiring the trial court to add the phrase 'via the internet' to the jury instructions would have required the jury to find beyond what section 97-5-33 provides."  This finding is not contrary to, or an unreasonable application of clearly established federal law.

**Ground Six (Right to be Heard)**

In his sixth ground for relief, Lowe alleges the trial court violated his right to be heard because his *pro se* motions were denied while "all of the lawyers' motions" were granted. Such a complaint not only fails to present a cognizable federal claim, but it is belied by the record, and was rejected on direct appeal.

The record reflects that in addition to filing 252 pages in *pro se* supplementary briefing on appeal, Lowe filed several *pro se* motions[17] in the lower court, including a 47-page pre-conviction motion for writ of habeas corpus. Many of the arguments he raised were addressed in either the motions filed, or arguments raised, by counsel. On direct appeal, the appeals court found no evidence supporting Lowe's argument that "the trial court denied his *pro se* motions because of bias against him."

That said, the undersigned notes that because the majority of Lowe's *pro se* motions challenge the search and seizure of evidence, they are barred by *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* instructs that Fourth Amendment claims are not cognizable for federal habeas review where, as here, a petitioner was provided a full and fair opportunity to litigate those claims in state court. In this Circuit, an opportunity "mean[s] just that: 'an opportunity,'" and Lowe received a full and fair opportunity here. *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (quotation omitted). Absent a showing that the State's process is "routinely or systematically" applied to prevent the litigation of

---

[17] Those motions included (1) motion to suppress evidence; (2) motion in limine to exclude evidence; (3) motion requesting a *Franks v. Delaware* hearing; (4) motion to suppress the search warrant; (5) motion for writ of habeas corpus; (6) motion for relief from judgment; and (7) motion to dismiss.

Fourth Amendment claims on their merits, Lowe cannot obtain federal review on these claims. *Janecka*, 301 F.3d at 320–21.

### Ground Nine (Admission of the Videos)

As his final ground for relief, Lowe argues the trial court erred in allowing the jury to view the pornographic videos (1)"without laying any foundation, or proof"; (2)"pre-viewing the images for probative value"; (3) determining whether the images "actually met the statutory standards of Lowe's charges"; or (4) determining whether "Lowe himself had ever viewed the images." The trial court overruled these objections at trial, and expressly found that the probative value of the videos was not substantially outweighed by unfair prejudice. On direct appeal, the Mississippi Court of Appeals affirmed that the videos were properly admitted under the Mississippi Rules of Evidence. In doing so, it stated: "Again, we reiterate that that the State was not required to prove where the pornography came from, [i.e., from the internet or some external drive or disc], or how it got onto the laptop, [i.e., the wireless network through which the connection was made, or the wireless device used]." The court also noted that "the question of whether Lowe was the user of the laptop who obtained the child pornography was a question of fact for the jury." *Lowe*, 269 So. 3d at 259.

For purposes of federal review, Lowe must show that the admission of the videos implicated due process concerns or rendered his trial fundamentally unfair. *Brue v. Vannoy*, 717 F. App'x 488, 489 (5th Cir. 2018); *Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011) (internal quotation marks and footnote omitted). But he has not and cannot make this showing.

The heart of the case against Lowe was the pornographic videos of children found on his laptop after he reportedly used it to show a movie with naked people in it to a nine-year-old girl less than a year after his release.  But unlike his first trial, Lowe was not deprived of a State-funded independent expert in computer forensics to support his defense.  *Lowe*, 127 So. 3d 178 (holding that the trial judge deprived an indigent defendant of a fundamentally fair trial by refusing him funds to procure an independent defense expert).  To the contrary, the record reflects that one was retained well in advance of trial but was never called to testify.  Accordingly, the State's expert testimony went unrebutted:   Videos located in Lowe's password protected account, Muzicman, showing children engaged in sexually explicit conduct with adults, were downloaded using the BitTorrent application.  The Muzicman account connected to the internet, via a Belkin wireless device, between May and July 2009, and the videos, some of which were located in the "favorites" directory, were downloaded or copied to the computer's hard drive via the internet or an external source on June 6, 2009.  In addition to this forensic evidence, the jury heard testimony that upon learning that the police were looking for him, Lowe left his job, abandoned his vehicle in a Wal-Mart parking lot, and was found in California months later.

The admission of the videos did not render Lowe's trial fundamentally unfair, and he is not entitled to federal relief.

### Conclusion

For the reasons discussed, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition be dismissed with prejudice.

30

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Under Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, will bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on October 31, 2023.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE